NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER BORIA, *et al.*,<br><br>            Plaintiffs,<br><br>v.<br><br>THE HERITAGE AT ALEXANDER HAMILTON, *et al.*,<br><br>            Defendants. | Civil Action No.: 23-22914<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

This matter comes before the Court on the motion to dismiss counts three and four of plaintiffs Jennifer Boria ("Boria"), Andrew Reyes ("Reyes"), and S.B.'s (collectively, "Plaintiffs") amended complaint (ECF No. 8-1, "FAC") filed by defendants The Heritage at Alexander Hamilton ("The Heritage"), Alexander Hamilton Associates, LLC ("Hamilton Associates"), Pennrose Properties, LLC ("Pennrose Properties"), and Pennrose Management Company ("Pennrose Management"), (collectively, "Defendants") (ECF No. 4). Plaintiffs opposed Defendants' motion (ECF No. 8, "Opp."), and Defendants replied in support of their motion (ECF No. 9, "Reply"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

**II.    BACKGROUND**

**A.  Factual History**[1]

---

[1] For the purposes of this motion to dismiss, the Court accepts the factual allegations in the FAC as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

1

On August 15, 2021, Plaintiffs moved into a housing unit at 256 23rd Avenue, Paterson, NJ 07513. FAC ¶ 1. The unit is owned by The Heritage and Hamilton Associates, managed by Pennrose Management, and was developed by Pennrose Properties. *Id.* ¶ 1.

Upon moving in, Plaintiffs allegedly observed mold and evidence of rodents. *Id.* ¶ 2. This included black mold in the bathroom (*Id.* ¶ 5) and rodent droppings throughout the unit (*Id.* ¶ 6). Plaintiffs also noted dust and rodent droppings in the HVAC vents. *Id.* ¶ 9. Plaintiffs notified certain Defendants of these issues and requested a cleaning of the unit and the HVAC (*Id.* ¶ 3), but Defendants did not respond (*Id.* ¶ 11).

Plaintiffs then contacted Stanley Steemer, a cleaning company, to clean the HVAC. *Id.* ¶ 12. A company technician arrived on or about September 24, 2021. *Id.* ¶ 12. However, the technician stated he could not legally clean the unit because the insulation used on the HVAC was illegal in New Jersey. *Id.* ¶ 13.

Plaintiffs subsequently contacted two other cleaning companies. *Id.* ¶ 14. One of those companies, Services for Home, visited the property on or about September 27, 2021 and cleaned the HVAC. *Id.* ¶ 15. The next day, Boria texted an employee of Pennrose Management stating that during the cleaning a dead rodent had been found in the HVAC and requesting a new air filter. *Id.* ¶ 16. As of the filing of the FAC, the air filter had not been replaced. *Id.* ¶ 61.

On or about December 21, 2021, Plaintiffs contacted E.J. Waterproofing to perform an air quality test of the unit. *Id.* ¶ 19. E.J. Waterproofing performed the test but did not provide Plaintiffs with the results. *Id.* ¶ 20. The company performed another test on February 12, 2022, which showed high counts of mold. *Id.* ¶ 21. Plaintiffs and certain Defendants were notified of the results. *Id.* ¶ 22.

Following these tests, Plaintiffs commissioned a Foreign Toxicology Report. *Id.* ¶ 28-29. The report—dated June 9, 2022—identified 36 types of fungi within the unit. *Id.* ¶ 31. It also found harmful levels of toxins within the body of each Plaintiff (*Id.* ¶ 34-36) and concluded that the unit posed "a health hazard to all occupants." (*Id.* ¶ 29). The report was presented to certain of the Defendants on November 22, 2022. *Id.* ¶ 37.

Plaintiffs underwent examinations by Dr. Annette B. Hobi, NMD, between July 19-28, 2022. *Id.* ¶¶ 38-50. Dr. Hobi found all three plaintiffs suffered injuries due to mold exposure and recommended treatment. *Id.* Dr. Hobi also recommended Boria and Reyes "immediately avoid continued exposure to the environmental hazard of the[ir] residence[.]" *Id.* ¶¶ 40, 47. As of the filing of the FAC, Defendants had neither remediated the mold (*Id.* ¶ 60) nor relocated Plaintiffs to another unit (*Id.* ¶ 63).

On or about October 18, 2022, Boria texted an employee of certain Defendants stating that the heating system in the unit was broken. *Id.* ¶ 54. Boria explained that the lack of heat exacerbated her bronchitis. *Id.* She also sent an email the following day complaining about the lack of heat to certain Defendants. *Id.* ¶ 55. As of the filing of the FAC, the heating system had not been fixed. *Id.* ¶ 62.

As a result of their alleged injuries, Plaintiffs assert damages in the form of medical expenses, lost wages, and pain and suffering. *Id.* ¶ 67.

**B. Procedural Background**

On August 11, 2023, Plaintiffs filed an initial complaint in the Superior Court of New Jersey, Law Division, Passaic County. ECF No. 1-2. On November 21, 2023, Plaintiffs filed an amended complaint asserting, for the first time, additional claims under federal law. ECF No. 1-9. The amended complaint includes claims for: negligence (Count one), breach of the warranty of

habitability and implied warranty of quiet enjoyment (Count two); negligence *per se* (Count three); *res ipsa loquitur* (Count four); and violation of the Fair Housing Act (Count six).[2] *Id.* at 1-38. On December 6, 2023, Plaintiffs filed a notice of removal to United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1446(a).

### III. LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips*, 515 F.3d at 234. Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. DISCUSSION

**A. Negligence Per Se (Count Three)**

    a. **Applicable Law**

In New Jersey, "a statutory violation might support a claim in any one of three ways: the statute may create civil liability by its provisions, a violation may constitute negligence *per se*, or a violation may constitute evidence of negligence." *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 479 (D.N.J. 2023) (internal quotation omitted). Civil liability may be "expressly provided" by a statute or conferred by a court as an "implied private right of action[.]" *See R.J. Gaydos Ins. Agency, Inc.*

---

[2] Count five alleges negligence against Defendants John Does 1-10 and ABC Corp 1-10, who are not parties to the instant motion. ECF No. 1-2 at 34-5.

*v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 274 (2001).  Negligence *per se* applies where a statute "specifically incorporate[s] the non-statutory or common-law standard of negligence."  *K.J.*, F. Supp. 3d at 479 (citation omitted).  Said differently, where a statute requires a finding that the defendant failed to exercise reasonable care, that finding, by its terms, "constitutes a finding of negligence."  *Senisch v. Tractor Supply Co.*, No. 1:16-CV-47 (NLH/KMW), 2018 WL 324717 at *11 (D.N.J. Jan. 8, 2018) (citation omitted).  And when a statutory violation is not "conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability."  *Id.* at *11 (quoting *Eaton v. Eaton*, 575 A.2d 858, 866 (1990)).

### b. Analysis

Defendants move to dismiss Plaintiffs' negligence *per se* claim.  Def. Br. at 10.  The claim is premised on Defendants' alleged violations of (1) regulations promulgated under New Jersey's Hotel and Multiple Dwellings Law ("HMDL"), (2) the federal Fair Housing Act ("FHA") and (3) the federal Toxic Substances Control Act ("TSCA").  *See* FAC at 30-31.  Each alleged basis of liability is discussed in turn.

#### i. HMDL

As an initial matter, the parties' briefing subsumes the distinct categories of direct liability and negligence *per se* liability under the heading of negligence *per se*.  *See* ECF No. 4-1 ("Def. Br.") at 17 ("[T]he HMD[L] regulations do not incorporate a common law standard or . . . provide for a private cause of action . . . .  As neither aspect exists, plaintiffs' claim in negligence per se . . . . must be dismissed."); Opp. at 19 n.13 ("[C]ognizability of a private cause of action . . . is only one aspect of the inquiry since, in New Jersey, inter alia traffic infractions can also form the basis of negligence per se . . . although they do not provide for a private cause of action.").  However, Plaintiffs do not bring a direct cause of action under HMDL regulations; they assert a negligence

5

*per se* claim based on violations of HMDL regulations. *See* FAC at 29-36. Nonetheless, because courts often group these distinct claims together under negligence *per se*, *see, e.g., Green v. 712 Broadway, LLC*, No. CV 17-991, 2018 WL 2754075 (D.N.J. June 8, 2018) (finding that because statute "do[es] not support finding a private cause of action . . . Plaintiff may not assert his negligence per se claims"), the Court will discuss why both bases for liability fail.

1. Direct Liability

This court has previously held that there is no private right of action under HMDL regulations. In *Axis Surplus Insurance Company v. Cavazzi*, the district court stated that regulations adopted pursuant to the HMDL "do[] not explicitly create a private right of action; and do[] not contain an implied private right of action." 19-cv-19980, 2020 WL 3169359 at *2 (D.N.J. June 15, 20202). The court explained that the text of the regulations "strongly suggests" the legislature intended to "benefit the public as a whole" rather than "to protect and confer a special benefit" on an individual plaintiff who could then assert a claim. *Id.* at *3. Furthermore, the provision for "broad enforcement power under [the] regulatory scheme"—including inspections, reports and citations—convinced the court there was "no evidence that the Legislative intent was to create a private right of action." *Id.* at *4. Accordingly, the court dismissed all claims premised on HMDL regulations. *Id.*

The cases cited by Plaintiffs do not contradict this holding.

First, Plaintiffs point to *Calco Hotel Management Group v. Gike* and posit that the court "would have found [a] *tenant's* HMD[L] private cause of action cognizable[.]" Opp. at 20. In *Gike*, the court declined to decide whether HMDL regulations include a private right of action and instead remanded the question to the trial court because the defendant had failed to timely raise the issue. 420 N.J. Super. 495, 507 (App. Div. 2011). However, the court was skeptical that such

a private right of action exists—noting "concern" as to whether compensatory damages would be an appropriate remedy for a HMDL violation—and declined to affirm summary judgment as to defendant's liability. *Id.* at 506. There is no basis to extrapolate from this limited holding and the court's expression of skepticism to the position that the court "would have" found a private right of action. *See also Franklin Mutual Insurance Company v. K.N.*, A-4025-15T1, 2018 WL 564416, at *5 (N.J. App. Div. Jan. 26, 2018) (declining to decide whether HMDL provides for private right of action and noting that its decision in *Gike* "emphasized we were 'not convinced'" that a HMDL violation made the defendant liable for compensatory damages). Moreover, such speculation must fail in light of the clear holding of *Axis Surplus*.

Second, Plaintiffs point to a series of cases—*Braitman v. Overlook Terrace Corporation*, *Dwyer v. Skyline Apartments,* and *Walsh v. Madison Park Properties*—and claim they "provide explicit or implicit support for an HMD[L] private cause of action[.]" Opp. at 21. These cases provide no such support. The court in *Walsh* found it "unnecessary to determine" whether the HMDL provides for civil liability because the plaintiff in that case had assumed the risk of the underlying injury. 102 N.J. Super 134, 142 (App. Div. 1968). The court in *Dwyer* addressed the related, but distinct, question of whether landlords are subject to strict liability under the HMDL and answered in the negative. 123 N.J. Super. 48, 52 (1973). Finally, the Court in *Braitman* did not address private rights of action, but rather inquired whether a violation of the HMDL could provide the basis for negligence *per se* liability. 68 N.J. 368, 385 (1975). On that score, the court found that violation of the HMDL "is not conclusive on the issue of negligence" and cannot form the basis of a negligence *per se* claim. *Id.* Thus, the cited cases provide neither explicit nor implicit support for a private right of action.

7

Lastly, Plaintiffs argue that the court in *Xianying Wu v. 307 Elizabeth Ave LLC* "found an HMD[L] private cause of action cognizable[.]" Opp. at 23. This argument is misplaced. In fact, the plaintiffs in that case asserted neither a private right of action under the HMDL nor a claim for negligence *per se*. *See* 2:19-cv-15837, 2020 WL 7778065, at *1 (D.N.J. Dec. 31, 2020). Instead, plaintiffs asserted a claim for simple negligence, and pointed to HMDL regulations for "support that a . . . duty and cause of action exist[s]" to defeat a motion to dismiss. *Id.* at *5. The court found plaintiffs had "adequately plead[] . . . a cause of action for negligence" but did not address the possibility of a direct action or negligence *per se*. *Id.*

2. Negligence *Per Se*

A violation of HMDL regulations cannot form the basis of a negligence *per se* claim.

The New Jersey Supreme Court directly addressed this issue in *Braitman*. There, the Court held that a violation of HMDL regulations can serve as "evidence of [a] defendant's negligence" but is "not *conclusive* on the issue of negligence." *Braitman*, 68 N.J. at 385-6. (emphasis added). Thus, a violation of HMDL regulations cannot support a claim of negligence *per se*.

Plaintiffs' citations to HMDL regulations are unpersuasive. As discussed, a statute may only form the basis of a negligence *per se* claim where the statute "specifically incorporate[s] the non-statutory or common-law standard of negligence." *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 479 (D.N.J. 2023) (internal quotation omitted). And because statutes "rarely define a standard of conduct in the language of common-law negligence," the application of negligence *per se* is "the exceptional situation". *Labega v. Joshi*, 470 N.J. Super. 472, 489-90 (App. Div. 2022) (internal quotation omitted). The cited regulations are not, in that respect, "exceptional[.]" *Id.* Specifically, the regulations do not prohibit an individual from acting negligently or below the standard of

8

reasonable care, *see* Opp. at 26-28, such that a violation would be "proof of negligence itself." *Id.* Thus, they cannot support a claim of negligence *per se*.

### ii. FHA

Defendants move to dismiss Plaintiffs' negligence *per se* claim premised on alleged violations of the FHA. Def. Br. at 20.[3]

#### 1. Negligence Per Se

An FHA violation cannot form the basis of a negligence *per se* claim.

For one, the FHA does not incorporate common law negligence standards. As noted, a statutory violation can only support a claim of negligence *per se* in the "exceptional situation," *Labega*, 470 N.J. Super. at 490 (citation omitted), where a statute "specifically incorporate[s] the non-statutory or common-law standard of negligence." *K.J.*, 659 F. Supp. 3d at 479 (citation omitted). Plaintiffs have not pointed this Court to any section of the FHA that incorporates a negligence standard such that a violation would be "proof of negligence itself," *Labega*, 470 N.J. Super. at 489 (citation omitted), and the Court perceives none.

For another, "the [c]ourts in this circuit have been clear that anti-discrimination statutes like . . . the FHA cannot serve as the basis of a negligence *per se* action." *Wartluft v. Milton Hershey School and School Trust*, 400 F. Supp. 3d 91, 114 (M.D. Pa. 2019). And Plaintiffs have not provided case law that states otherwise.

Finally, Plaintiffs' citation to *Martinez v. Optimus Properties, LLC*, is unavailing. *See* Opp. at 14-15. In *Martinez*, the court found that a violation of the FHA can support a claim of negligence *per se* under California law. *See* 2:16-cv-08598, 2017 WL 104073, at *7-8 (C.D. Cal.

---

[3] Plaintiffs also assert a direct cause of action under the FHA, FAC at 35-36, which Defendants do not move to dismiss.

Mar. 13, 2017). However, California uses a different framework than New Jersey for determining the applicability of negligence *per se*. In particular, California applies a four-part test, *see Id.* at *8, no part of which requires the statute "incorporate the non-statutory or common-law standard of negligence," *K.J.*, 659 F. Supp. at 479. [4] Thus, the holding in *Martinez* is not relevant to Plaintiffs' claims.[5]

### iii. TSCA

As in their discussion of Plaintiffs' HMDL claims, Defendants' TSCA briefing subsumes both direct liability and negligence *per se* liability under negligence *per se*. *See* Def. Br. at 18-19 ("[A] violation of the TSCA does not provide for a private cause of action sounding in tort to justify a negligence per se claim."). However, Plaintiffs do not bring a direct action under the TSCA, but only assert negligence *per se*. *See* FAC 30-36. Nonetheless, as before, the Court will discuss why both bases for liability fail.

#### 1. Direct Liability

"The TSCA 'does not permit private citizens to pursue either civil penalties available under the statute . . . or compensation for personal injuries[.]'" *N'Jai v. United States Env't Prot. Agency*, 705 F. App'x 126, 128 (3d Cir. 2017) (quoting *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 248 n.5 (3d Cir. 2005)). Here, Plaintiff seeks compensatory damages for Defendants' alleged violation of the TSCA. *See* FAC at 31-32. However, a private citizen cannot

---

[4] Even if this Court were to apply the test found in *Martinez*, Plaintiffs' argument would be unconvincing. A court in this circuit, applying a substantively identical four-part test required under Pennsylvania law, found that the FHA cannot serve as the basis for a negligence *per se* claim. *See Wartluft*, 400 F. Supp. 3d at 113-114.

[5] Plaintiffs also point to *Alloway v. Bradlees, Inc.*, claiming it is "potentially dispositive as to the issue of FHA negligence per se." Opp. at 16. However, Plaintiffs concede that the court in *Alloway* held that a violation of OSHA regulations could merely serve as "'evidence' of negligence," thus falling short of negligence *per se*. *Id.* at 17.

10

seek "compensation for personal injuries" under the statute. *N'Jai*, 705 F. App'x at 128. Thus, Plaintiffs cannot maintain a private right of action under the TSCA.

2. Negligence *Per Se*

Plaintiffs have not pointed the Court to any section of the TSCA that incorporates a negligence standard such that a violation would be "proof of negligence itself," *Labega*, 470 N.J. Super. at 489 (citation omitted), and the Court perceives none. Thus, Plaintiffs cannot pursue a negligence *per se* claim based on a TSCA violation.

In conclusion, Plaintiffs cannot maintain a negligence *per se* claim premised on HMDL regulations, the FHA, or the TSCA. Accordingly, Plaintiffs' claim is dismissed.

**B. Res Ipsa Loquitur (Count IV)**

Plaintiffs assert a claim under *res ipsa loquitur*. *See* FAC at 32-33. However, *res ipsa loquitur* "'is not a theory of liability; rather, it is an evidentiary rule[.]'" *Clark v. Darden Restaurants, Inc.*, No. 11-CV-1056, 2013 WL 104052, at *4 n.3 (D.N.J. Jan. 8, 2013), *aff'd*, 613 F. App'x 101 (3d Cir. 2015) (quoting *Myrlak v. Port Auth. of New York & New Jersey,* 157 N.J. 84, 95, 723 A.2d 45, 51 (1999)). As such, it is "not a cognizable claim on its own[.]" *Anthony v. Cnty. of Morris*, No. A-3641-21, 2023 WL 7014339, at *7 (N.J. Super. Ct. App. Div. Oct. 25, 2023). Plaintiffs' claim is dismissed.

**V.    CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is granted.

**Accordingly, IT IS** on this 30th day of July, 2024

**ORDERED** that Defendants' motion to dismiss counts three and four of Plaintiffs' FAC (ECF No. 4) is **GRANTED**.

**SO ORDERED.**

11

                */s/ Claire C. Cecchi*
                **CLAIRE C. CECCHI, U.S.D.J.**